UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY MUMMA,<br><br>    Plaintiff,<br><br>    v.<br><br>NEW BALANCE ATHLETIC SHOE, INC.<br>and NEW BALANCE ATHLETICS, INC.,<br><br>    Defendant. | Civil Action No. |

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

    NOW COMES the Plaintiff, Jeffrey Mumma ("Mumma"), by and through undersigned counsel, and complains against the Defendants, New Balance Athletic Shoe, Inc. and New Balance Athletics, Inc. ("New Balance"), as follows:

INTRODUCTION

    1.    New Balance violated state and federal civil rights laws by firing Mumma because of his disabilities (including a significant shoulder injury) and in retaliation for Mumma requesting and needing medical leaves of absence to which he was entitled under state and federal laws. New Balance claims that Mumma was fired because he asked for an indefinite leave of absence and because New Balance needed to fill Mumma's Material Handler I position.  New Balance's stated reasons for discharging Mumma are manufactured, untrue, and a pretext for terminating Mumma unlawfully. In addition, New Balance acted unlawfully by failing and refusing to rehire or reinstate Mumma when Mumma was ready to return to work.

1

## JURISDICTION AND PARTIES

2. This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*

3. Mumma is a United States citizen residing in Skowhegan, Maine.

4. New Balance is a Maine corporation that produces athletic footwear from manufacturing facilities located in Skowhegan, Norridgewock and Norway, Maine.

5. New Balance had 500 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

6. This Court has subject matter jurisdiction over Mumma's federal and state claims pursuant to 28 U.S.C. §§ 1331and 1367.

7. On or about May 10, 2017, Mumma filed a timely Complaint/Charge of Discrimination against New Balance alleging unlawful disability discrimination and retaliation with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC"). An Amended Complaint/Charge of Discrimination was filed on August 14, 2017.

8. On or about December 21, 2017, the MHRC issued a Notice of Right to Sue with respect to Mumma's state law claims.

9. On or about December 22, 2017, the EEOC issued a Notice of Right to Sue with respect to Mumma's federal law claims.

10. Mumma has exhausted his administrative remedies with respect to all claims set forth in this Complaint.

## JURY TRIAL REQUESTED

11. Mumma requests a trial by jury for all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

12. From March to August, 2010, Mumma worked at New Balance as a temporary employee loading and unloading trucks in the warehouse.

13. Mumma was hired by New Balance as a regular employee in August 2010 as an Embroidery Operator making $10 per hour. Mumma was also trained in shipping and receiving, stockroom, webbing, elevator, lass and floor support.

14. Mumma was promoted to Material Coordinator in June 2012 making $13.75 per hour.

15. Mumma was transferred to the position of Material Handler I in the Blue Value Stream at the Skowhegan factory in June 2016.

16. Mumma's highest rate of pay was $16.35 per hour.

17. Mumma tore his rotator cuff in about August 2016.

18. Mumma's injury did not heal with physical therapy and eventually he needed time off from work due to his injury.

19. Mumma's last day of work was October 28, 2016.

20. Mumma started a medical leave of absence on October 29, 2016.

21. Mumma had shoulder surgery on December 29, 2016.

22. Mumma's leave of absence was protected under state and federal family medical leave laws (hereinafter, "FMLA.")

23. New Balance informed Mumma that his protected leave was going to end on January 13, 2017 and that he needed to request Company Medical Leave.

24. On December 19, 2016, Mumma requested Company Medical Leave to begin when FMLA ended.

25. On January 3, 2017, Michael Curran, MD, Mumma's orthopedic surgeon, completed and signed a form stating that Mumma's leave was expected to end on about April 28, 2017.

26. New Balance did not seek any additional information or clarification from Mumma or his doctor regarding the expected length of his medical leave.

27. Mumma received a call from New Balance on January 12, 2017 and was informed that his request for additional leave was denied and that he was being fired.

28. Mumma was fired effective January 13, 2017.

29. The reason for termination on New Balance's status/payroll change form was "health reason."

30. Through counsel, Mumma requested a written statement from New Balance regarding the reason he was fired.

31. Counsel for New Balance responded in a letter dated February 6, 2017 which reads, in part:

> "…At the end of [FMLA and one week of company leave], he was not cleared by his physician and was unable to . . . return to work. He requested additional leave time of unknown duration, and his physician listed the leave end date as ? 4/28/17 with no indication he would be able to return at that time. Based on this, New Balance was not able to further extend any personal leave and his employment ended on 1/13/17."

32. Mumma's doctor released him to return to work effective April 5, 2017.

4

33. On April 10, 2017, Mumma sent an email to Jennifer Curtis-Witham asking for his job back at New Balance. The email read,

> "Dear Jen Curtis-Witham,
> "As you know my employment with New Balance ended on January 13, 2017 while I was on medical leave of absence. At that time I was told that new balance could not hold my job until I was released in April 2017, but that I should let you know when I am cleared by my doctor. I have been released by my doctor to return to work on April 5, 2017 as expected. I am asking you to reinstate me at my position as a vss/ material handler I making 16.35 an hour or a position that is similar. Thank you
> "Jeff Mumma"

34. On April 12, 2017, Ms. Curtis-Witham replied by email:

> "Hi Jeff,
> "Nice to hear from you and that your recovery has been successful!
> "We have since filled your position but what I would recommend is that you apply online and if anything were to open up we could certainly consider rehiring you.
> "Take care
> "Jennifer"

35. On April 13, 2017, Mumma sent a follow-up inquiry to Ms. Curtis-Witham:

> "HI Jennifer,
> "I have one question would I be rehired at my out going pay and longevity or starting again from the bottom. Thank you.
> "Jeff Mumma"

36. On April 14, 2016, Ms. Curtis-Witham side-stepped Mumma's question and replied only that New Balance would "consider [his] experience and calculate that in to any pay we offered."

37. Mumma has a disability as defined by the MHRA and the ADA in that his shoulder impairment substantially limited the major life activities of performing manual tasks, lifting, and working especially when the limitations of his shoulder impairment exclude the mitigating effects of surgery and physical therapy. His condition also substantially limited the functioning of a major bodily system.

5

38. Mumma's shoulder impairment significantly impaired his physical health in that it had an actual and expected duration of more than six months (August 2016 to April 2017) and impairing his health to a significant extent as compared to what is ordinarily experienced in the general population.

39. Mumma was regarded as disabled by New Balance.

40. Mumma had a record of disability.

41. Mumma was a qualified individual with a disability.

42. In its submission to the MHRC, New Balance did not dispute that Mumma had a disability.

43. New Balance's stated reason for firing Mumma was that Mumma allegedly requested leave of an indefinite duration.

44. New Balance asserts that the law does not require employers to grant leave for an indefinite duration.

45. New Balance's stated reason for firing Mumma is false.

46. Mumma did not request or need leave for an indefinite duration.

47. Mumma asked for leave beginning on December 29, 2016 and ending on about April 28, 2017. The doctor's shorthand for this was "? 4/28/17."

48. The ADA does not require employees to pinpoint the exact date and hour that he or she will be able to return to work for a number of reasons. An employee may have difficulty scheduling an appointment with the doctor to obtain his/her release. In addition, the healing process varies from one individual to the other making it difficult for a medical provider to predict months into the future the precise date that an employee will be able to return to work.

49. As it turned out, Mumma recovered more quickly than expected and was able to return to work as of April 5, 2017.

50. Mumma was fired effective January 13, 2017. Mumma believes that he was still on a protected FMLA leave at that time and had not used any Company Medical Leave.

51. New Balance claims that it fired Mumma effective January 13, 2017 because it needed to fill his Material Handler I position.

52. The MHRC gave New Balance the opportunity to explain why it would have been a hardship or burden to provide Mumma with medical leave until Mumma was able to return to work in April. *See* question #11 in the Request for Information and Documents-Respondent that the MHRC sent to New Balance.

53. In spite of this, New Balance did not allege or provide any facts to the MHRC to support a claim that it was an undue hardship to hold Mumma's job open until April 2017.

54. For example, New Balance provided no information about who performed Mumma's job duties between December 29, 2016 and January 13, 2017 and why that person could not continue to fill in for Mumma on a temporary basis until April 2017.

55. Mumma's request for additional medical leave of absence was a request for reasonable accommodation under the ADA.

56. Mumma's request to be reinstated or rehired in April 2017 was a request for reasonable accommodation under the MHRA and ADA.

57. Mumma's requests for the reasonable accommodations of (a) an unpaid leave of absence until about April 28, 2017 and (b) to be reinstated or rehired on about April 13, 2017, were unlawfully denied by New Balance.

58. New Balance discriminated against, fired, and refused to rehire Mumma because of his disability.

59. New Balance discriminated against, fired, and refused to rehire Mumma because New Balance regarded Mumma as a person with a disability.

60. New Balance violated the ADA when it failed to accommodate his disability and fired him instead of providing him with reasonable accommodation.

61. New Balance retaliated against Mumma in violation of the ADA for exercising his right to request medical leave and additional leave as reasonable accommodations.

62. New Balance failed to reasonably accommodate Mumma's disabilities when it fired him and when it failed to rehire him.

63. New Balance knowingly and willfully violated Mumma's rights under the ADA and MHRA.

64. New Balance unlawfully discriminated against Mumma with malice or reckless indifference to his rights.

65. As a result of New Balance's unlawful discrimination and retaliation, Mumma has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, humiliation, and other pecuniary and non-pecuniary losses.

66. Mumma has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and he will continue to suffer irreparable injury from his treatment by New Balance unless and until New Balance is enjoined by this court.

## COUNT I: MHRA – DISABILITY DISCRIMINATION

67. Paragraphs 1-66 are incorporated by reference.

68. New Balance discharged Mumma from employment and failed to rehire him because of his disability in violation of the MHRA.

## COUNT II: ADA – DISABILITY DISCRIMINATION

69. Paragraphs 1-68 are incorporated by reference.

70. New Balance discharged Mumma from employment and failed to rehire him because of his disability in violation of the ADA.

## COUNT III: ADA – REASONABLE ACCOMMODATION

71. Paragraphs 1-70 are incorporated by reference.

72. New Balance failed to provide Mumma with reasonable accommodations in violation of the ADA.

## COUNT IV: ADA – RETALIATION

73. Paragraphs 1-72 are incorporated by reference.

74. New Balance discharged Mumma from employment and failed to rehire him in retaliation for Mumma's request and need for reasonable accommodation.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

a) Enter Judgment in Plaintiff's favor;

b) Declare the conduct engaged in by Defendant to be in violation of his rights;

c) Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

d) Order Defendant to employ Mumma in his former position or, in the alternative, award Mumma front pay and benefits;

e) Award equitable-relief for back pay, benefits and prejudgment interest;

f) Award compensatory damages in an amount to be determined at trial;

g) Award punitive damages in an amount to be determined at trial;

h) Award nominal damages;

i) Award attorney's fees, including legal expenses, and costs;

j) Award prejudgment interest;

k) Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability or use of protected medical leave;

l) Require Defendant to mail a letter to all employees notifying them of the verdict and stating that Defendant will not tolerate discrimination or retaliation in the future;

m) Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

n) Require that Defendant train all management level employees on the protections afforded by the MHRA and ADA;

o) Require that Defendant place a document in Mumma's personnel file which explains that Defendant unlawfully terminated him because of disability discrimination and retaliation; and

p) Grant to Mumma such other and further relief as may be just and proper.

Dated: March 6, 2018               /s/ Chad T. Hansen
                                   chansen@maineemployeerights.com

                                   Attorney for the Plaintiff

                                   MAINE EMPLOYEE RIGHTS GROUP
                                   92 Exchange Street 2nd floor
                                   Portland, Maine 04101
                                   Tel. (207) 874-0905
                                   Fax (207) 874-0343